**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**ROBERT GRIFFIN, JR.,**

       **Plaintiff,**

**vs.**                                 **Case No.  5:08cv172-RH/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

       **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D).  It is recommended that the decision of the Commissioner be reversed and benefits awarded.

**Procedural status of the case**

Plaintiff, Robert Griffin, Jr., applied for disability insurance benefits and supplemental security income benefits.  Plaintiff alleges disability due to mental retardation.  The Administrative Law Judge found that although Plaintiff is mildly mentally retarded, his condition does not meet or equal Listing 12.05C.  R. 17, 19.  He

further determined that Plaintiff has the residual functional capacity to perform a full

range of work with moderate limitations of his ability to understand, remember, and

carry out detailed instructions, moderate limitations to maintain attention and

concentration for extended periods, and with the limitation that Plaintiff can only perform

simple, repetitive, unskilled work.  R. 19.  With this residual functional capacity, the ALJ

determined that Plaintiff could perform his past relevant work as a construction worker II

and was not disabled as defined by Social Security law.  R. 21.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if

supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).  "If the Commissioner's decision is supported by substantial evidence we must

affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial

deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ.  A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

     5.     Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence in the Record**

     **Evidence gathered by the State Agency**

     Plaintiff was 47 years old at the time of the administrative hearing, completed 10th grade in special education, but cannot read.  R. 117, 120, 201-202.  Plaintiff has a driver's license and drives, but he needed special help to complete the driver's examination, having the questions read to him.  R. 120, 201.  He needs help writing checks and balancing his check book.  R. 115.  He is unable to read directions to prepare food.  R. 114.  Plaintiff lives with his mother.  *Id.*

     Plaintiff has past relevant work as a mason's helper or laborer, working for his uncle, Frank Morgan.  R. 85, 202.  He no longer has that job because his uncle retired.  R. 85.  Plaintiff's uncle said that he knew that Plaintiff could not read and he "worked with" him.  R. 120.  Plaintiff's uncle said that he had to check on Plaintiff daily to ensure

he was doing his job correctly.  R. 121.  The State Agency contacted Plaintiff's uncle,

Frank Morgan, and reported:

> Uncle reported that clmt did mix the concrete and prepared the mud to be
> placed on the boards.  Uncle had to ensure that the concrete was mixed
> properly and that enough of the mixture was placed on the brick and or
> boards.  Clmt did alot [sic] of physical work.  Moving bricks and positioning
> them., [sic]  Clmt did prep work for the construction workers.  Uncle
> reported that he believed clmt would have been unsuccessful if he had
> worked for a different contractor who was not aware of his special needs.
> Uncle reported that he had to make sure that the clmt was on time for
> work and that he remained on task.  Uncle was aware of the fact that clmt
> had limited skills in reading and writing ability.

R. 121.

Plaintiff did some work at his mother's home.  R. 114.  He mowed, raked, and

washed dishes.  *Id.*  He took care of his mother, who has medical problems.  R. 120.

Plaintiff helped cook when his sister let him.  R. 85.  He was able to cook light meals

using the stove and microwave.  R. 120.  He was able to shop and had the necessary

items memorized.  *Id.*  He was able to do laundry and takes care of his own personal

hygiene.  *Id.*  Plaintiff had telephone numbers memorized, and could read very simple

words.  *Id.*

Plaintiff's earnings history reflects that he did not begin to earn substantial sums

until 1986.  R. 73.  He had no earnings in 1990, 1991, and 1992, had minimal earnings

in 1995, and no earnings in 1996.  R. 74.  His last earnings were in 2004.  *Id.*

**Testimony at the Administrative Hearing**

Plaintiff testified that he worked as a mason's helper.  R. 202.  He made the

mortar, carried brick and block, and built the scaffold.  *Id.*  He worked for his uncle from

about 1985 to 2004.  *Id.*  He stopped when his uncle was injured and sold his business.

R. 203.

Plaintiff said that his head hurt "all the time" as he worked.  R. 203.  He said that

his skull was fractured and growing into his brain, and, in 1985, "they had to cut it out."

R. 204.  He still had headaches about four times a month.  *Id.*  The headaches would

last "sometimes a day."  *Id.*  His headaches awakened him at night about three times a

month.  R. 216.

Plaintiff said he has a cataract on his left eye.  R. 208.  He normally wears

prescription glasses.  *Id.*

Plaintiff said he lived with his mother, his sister, and her son.  R. 210.  During the

day he sits in the house with his mother.  *Id.*  He said he watches about six hours of

television a day.  R. 215.  He sometimes gets his mother something to eat or drink since

she is not able to walk much.  R. 210.  He said he sweeps the house once in a while,

and washes the dishes.  *Id.*  His sister does the cooking.  *Id.*  Plaintiff said that he does

the yard work, mows, picks up limbs, and weeds.  R. 211.  He has an acre to mow using

a riding mower.  *Id.*  He was still able to drive, but does not drive much.  R. 212.  His

sister drove him over on the Sunday before the hearing so that he and she could find

the hearing room, and his mother came with him on the day of the hearing.  R. 213.  He

said his mother and sister do the shopping, and that he does not.  R. 214.  He said his

sister does the laundry, too.  *Id.*

The vocational expert testified that Plaintiff's past relevant work was most

analogous to a construction worker II, unskilled, requiring very heavy exertion.  R. 224.

The expert then was asked to consider an individual 47 years of age, who had special

education to the 10th grade, with no ability to read, write, or use numbers, with past work history as a mason's helper, and no physical restrictions.  R. 225.  The expert was asked further to assume that the person could remember simple instructions but may have difficulty with more complex instructions, could follow a routine and complete a normal workday and week, could work at a consistent pace and interact appropriately with others, has adequate adaptation skills, and could perform general laborer work of a simple repetitive nature on a sustained basis.  *Id.*  The expert said that such a person could go back to his past relevant work as a construction worker II.  R. 226.  If, however, such a person had headaches four times a month and could not work on those days, he would not be able to do his past relevant work.  R. 227.  Such a person, said the expert, could miss two days a month from headaches and expect to remain employed.  *Id.*

**Medical evidence**

On April 6, 2005, Plaintiff was referred for a psychological evaluation by George L. Horvat, Ph.D.  R. 139.  He was then 44 years old.  *Id.*  He was driven to the interview by his sister.  *Id.*

Plaintiff reported to Dr. Horvat that he had surgery on his head twenty years earlier.  *Id.*  He said that when he was eight or nine years old, a limb fell on the right side of his head.  *Id.*  He said that since 1985, he suffered from bad headaches.  *Id.*  He said that the doctor told him that a part of his skull was growing into his brain, and this was surgically removed.  *Id.*

Plaintiff reported that he cleaned the house for his mother.  R. 139.  He said he slept and ate well.  *Id.*

Dr. Horvat noticed no impairment in attention, concentration, or memory.  R. 140. Plaintiff was cooperative.  *Id.*  Dr. Horvat said that Plaintiff "appeared to be of below average intelligence based upon verbal skills demonstrated during the interview and his fund of knowledge was impoverished by his IQ and his education."  *Id.*  He found Plaintiff's judgment to be fair, and found that he was capable of simple decision making. *Id.*  Dr. Horvat said: "The claimant's poor social judgment makes him vulnerable to the possibility of being victimized and he isolates himself because he is slow."  *Id.*

Dr. Horvat administered standard I.Q. tests.  R. 140.  Plaintiff was found to be motivated, and "tried his best," but was "very low in ability."  *Id.*  Plaintiff scored 62 on the Verbal I.Q., 74 on the Performance I.Q., and 64 on the Full Scale I.Q. tests.  *Id.*  Dr. Horvat found that "[h]is full scale IQ meets one of the criteria for Mild Mental Retardation."  *Id.*  Dr. Horvat concluded:

> Since the claimant can't read and has poor social judgment and could be victimized by those wishing to take advantage of him, it would be better if he had a guardian to look after his interests.  He could do well in a situation that was labor intensive and required repetitive work demands.

R. 141.  Dr. Horvat felt that Plaintiff was not capable of managing his funds.  *Id.*

On May 23, 2005, a non-examining State Agency psychologist read the record and wrote that Plaintiff was "still able to sustain the mental demands of appropriate concentrated task-oriented activity," apparently meaning that he could still do work.  R. 144.  The State Agency psychologist found that Plaintiff had "productive past employment experience in masonry work & general labor."  *Id.*  He also found that Plaintiff "continues to function adequately in a full range of routine" activities of daily living.  *Id.*  He did not think that Plaintiff's condition met or equaled Listing 12.05, relying

upon these comments, that is, Plaintiff's assumed work history and activities of daily living.  R. 150.

On October 31, 2005, a second non-examining State Agency psychologist, Suzanne K. Zoss, Ph.D.,  thought that Plaintiff's "intellectual limitations are of unclear etiology, but they may be associated with a head injury at age 8 and subsequent brain surgery in 1985."  R. 162.  This psychologist, like the previous one, thought that Plaintiff was "capable of performing general labor of a simple repetitive nature on a sustained basis" because he was "able to do a wide range of ADLs [activities of daily living] and has intact physical capacities."  *Id*.  The psychologist considered the statements of Plaintiff and "his third party" to be reasonable, attributable to his mental condition, and credible.  R. 176.  She generally considered the criteria of Listing 12.05, finding that the Listing was not satisfied.  R. 168.  She also specifically found that criterion C of Listing 12.05 (a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function) had not been established.  R. 176.

On September 17, 2007, Hebert E. Brooks, M.D., conducted a consultative disability evaluation of Plaintiff.  R. 182.  Dr. Brooks related that Plaintiff suffered a severe head injury at age 8 when a tree limb feel on his head "and apparently he had a depressed skull fracture from this."  *Id*.  He noted that "[t]here has been a marked difference in visual acuity in his eyes and it is not certain whether this is related or not."  *Id*.  Plaintiff experienced black out spells until 1993.  *Id*.  He was operated on at age 25 for "continuous problems with his skull."  *Id*.  Dr. Brooks found a thoroughly healed 4 cm. depression of the skull in the right temporal region.  *Id*.  Dr. Brooks's impression

was severe decreased visual acuity in the left eye, residuals of an old brain injury with

mental retardation mild to moderate, inability to read very much, and occasional

recurrent low back pain.  R. 183.  He noted that Plaintiff had poor eyesight in the left

eye.  R. 190.  Dr. Brooks thought that Plaintiff "should be able to do repetitive physical

employment not requiring reading or mental concentration."  R. 183.

**Legal Analysis**

> **Whether the ALJ erred in finding that Plaintiff's condition does not
> meet or equal Listing 12.05C**

The Commissioner's rules provide that if the claimant has an impairment that is

listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. §

1599, then a finding of disability will be made at Step 3 without considering the

claimant's age, education, and work experience.  20 C.F.R. § 1520(d).

> The Secretary explicitly has set the medical criteria defining the listed
> impairments at a higher level of severity than the statutory standard.  The
> listings define impairments that would prevent an adult, regardless of his
> age, education, or work experience, from performing *any* gainful activity,
> not just "substantial gainful activity."

Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990)

(emphasis by the Court).  A claimant is entitled to benefits if it is shown that his or her

limitations meet, or are medically or functionally equal to, the limitations set forth in the

Listing.  Shinn ex rel. Shin v. Commissioner, 319 F.3d 1276, 1282 (11th Cir. 2004).  The

claimant has the burden of proving that his impairments meet or equal a listed

impairment by presentation of specific evidence of medical signs, symptoms, or

laboratory test results meeting all of the specified medical criteria.  Sullivan v. Zebley,

493 U.S. at 530, 110 S.Ct. at 891.  "For a claimant to show that his impairment matches

a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.* (emphasis by the Court).

Listing 12.05 provides in relevant part:

**12.05 Mental Retardation**:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

*               *               *

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

At step 2, the ALJ found that Plaintiff has the "severe" impairment of mild mental retardation.  R. 17.  At step 3, writing with respect to Listing 12.05C, the ALJ wrote:

The claimant has functioned with mild mental retardation for a long time.  During this time he was able to sustain employment and maintained adequate functional ability overall.  There is no evidence that he has experienced any exacerbation of symptoms involving intellectual functioning.  While his impairment remains severe, it is not disabling.

R. 17.  The ALJ further reasoned:

In terms of the requirements of paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale of IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  The claimant has no physical impairments and no other mental impairment that would satisfy the criteria of this listing.

R. 18.  The ALJ said:

As explained in the discussion above relating the requirements in paragraph C, the claimant has valid IQ scores between 62 and 74, however, these scores along with the other evidence are contraindicative of any diagnosable mental disorder beyond mildly sub par intellectual functioning.  He does not have marked or extreme limitation in any functional domain.

R. 18.

Plaintiff contends that the ALJ's decision that Plaintiff's condition does not meet or equal Listing 12.05C is not supported by substantial evidence in the record.  Plaintiff first argues that the ALJ rejected Listing 12.05C equivalency because there was no evidence that Plaintiff was mentally retarded before age 22.[1]  Plaintiff cites page 18 of the record for this contention.  Doc. 16, p. 9.  The ALJ did not make such a finding on page 18 or elsewhere in his decision.  The ALJ in fact determined that Plaintiff met the criteria for mild mental retardation, so finding that this was a "severe" impairment at step 2.  This argument, therefore, is unnecessary.

Plaintiff contends that the ALJ erred by finding at step 3 that Plaintiff did *not* suffer from mild mental retardation.  Doc. 16, p. 10.  Plaintiff recites findings made by the ALJ *at step 4* (citing R. 20-21), but those findings were not directly supportive of the step 3 finding.  Nonetheless, those findings elaborate upon the step 3 findings quoted above.  In effect, the ALJ discounted the effect of Plaintiff's I.Q. scores and diagnosis of mild mental retardation, finding instead that he has only "mildly sub par intellectual functioning."  R. 18.  The phrase "*contraindicative* of any *diagnosable* mental disorder"

---

[1] In Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001), the court held that "a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two."  276 F.3d at 1266.  If a claimant's I.Q. scores are valid, the scores alone satisfy the first criterion of Listing 12.05C.  *Id.*, at 1269.

is the ALJ's way of saying that the *diagnosed* mental disorder (diagnosed by valid I.Q. scores) has been discounted.  Nonetheless, as discussed ahead, it is within the authority of the ALJ at step 3 to discount the diagnosis if the reasons are supported by substantial evidence in the record.

In Lowery v. Sullivan, 979 F.2d 835 (11th Cir. 1992), the court held:

> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities.

979 F.2d at 837.  The ALJ seems to have assumed that the I.Q. scores were valid, having found at step 2 that Plaintiff has the "severe" impairment of mild mental retardation.[2]  There is nothing to suggest that the I.Q. scores were not valid.  Dr. Horvat found that Plaintiff was "motivated" and "tried his best."   R. 140.

A valid I.Q. score, however, is not the end of the analysis as to Listing 12.05C. "This court . . . has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior."  Lowery v. Sullivan, 979 F.2d at 837,  *citing* Popp v. Heckler 779 F.2d 1497, 1499 (11th Cir. 1986).  It is also appropriate to consider medical reports, daily activities, behavior, and other evidence in the record.  Popp, 779 F.2d at 1499.

---

[2] "It is therefore critical that an ALJ specifically address and resolve the validity of an I.Q. score; if the I.Q. score is valid and meets or equals the criteria of a listed impairment, the ALJ can go no further."  Thomas v. Barnhart, 2004 WL 3366150, *2 (11th Cir. Dec 07, 2004) (No. 04-12214).

In Popp, the court sustained the rejection of a claim of equivalency to Listing 12.05C because the claimant's I.Q. score of 69 was "inconsistent with evidence that [the claimant] had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher."  779 F.2d at 1499. Additionally, there was evidence in Popp that the claimant had "tended to place himself in a very unfavorable light," thereby rendering the personality test scores (the MMPI, not the I.Q. test) invalid *in the opinion of the examine*r.  779 F.2d at 1498-1499, 1500 (emphasis added).

Popp is perhaps the strongest case for finding that an I.Q. score below 70 does not necessarily meet Listing 12.05C.  There are several other cases with facts somewhat like Popp.  For example, in Bischoff v. Astrue, 2008 WL 4541118 (S.D. Fla. Oct 9, 2008) (No. 07-60969-CIV) the claimant's I.Q. scores were lower than 70. However, the claimant had previously worked as a parts manager and an automobile mechanic, jobs which require technical knowledge and skills, and he successfully supervised other people for five years.  *Id.*, at *20.  There was also evidence that the claimant was "faking" his I.Q. score, and gave conflicting reports that he had finished only the sixth, or seventh, or eighth, or ninth, or tenth grades, or had a G.E.D., or had vocational training.  *Id.*  The court affirmed the ALJ's determination that Listing 12.05C was not met.

The same result occurred in Davis v. Astrue, 2008 WL 2939523 (M.D. Ala. Jul 25, 2008) (No. CIV.A. 2:07CV880-TFM), where the claimant had an IQ score below 70. She had completed twelfth grade, received training in cosmetology and secretarial

skills, had a driver's license, was able to read, write, and perform simple math, and a

consulting psychologist had determined that she was in the borderline level of

intellectual functioning, rather than being mildly retarded. *Id.*, at *3. The court affirmed

the ALJ's determination that Listing 12.05C was not met.

There are a number of other cases, however, much more analogous to the case

at bar. In <u>Cobb v. Barnhart</u>, 296 F.Supp.2d 1295 (N.D. Ala. 2003), the court held that

the fact that the claimant had previously held work as a cement finisher, car washer,

and a street sweeper, did not constitute substantial evidence in the record to rebut the

presumption which arises from valid I.Q. scores within the range specified by Listing

12.05C (full scale I.Q. of 65). 296 F.Supp.2d at 1298. *See also,* <u>Markle v. Barnhart</u>,

324 F.3d 182, 187 (3d Cir. 2003) ("ability to pay his own bills, add and subtract, use an

ATM machine and to take care of all his own personal needs," and "ability to identify

and administer his medication; his previous jobs; his obtaining a GED" were not

inconsistent with qualifying mental retardation and the I.Q. scores) (citing <u>Brown v.</u>

<u>Sec'y of HHS</u>, 948 F.2d 268, 270 (6th Cir. 1991), "rejecting the Commissioner's

argument that a claimant's full scale IQ of 68 was inconsistent with, among other things,

his driver's license and work history as a truck driver, limited literacy and sixth grade

education, and ability to make change, do laundry, and clean his room.").

In <u>Durham v. Apfel</u>, 34 F.Supp.2d 1373 (N.D. Ga. 1998), the court reached a

similar conclusion. The claimant there had a full scale I.Q. of 68. 296 F.Supp.2d at

1380. He had worked over 40 years, and the ALJ had found that this showed "a long

history of adaptive behavior." *Id.* The court reasoned otherwise, finding that this work

was primarily as a heavy laborer and not substantial evidence to conclude that he had a

history of adaptive behavior. *Id.* The claimant had no earnings for 9 of the years from 1953 to 1991, and "minimal earnings several other years." *Id.* The court concluded that "[t]here is no evidence that these jobs are beyond the reach of a mildly retarded individual." *Id.* The court concluded that the ALJ erred in not finding that the claimant met Listing 12.05C, finding the facts in Popp to be distinguishable. *Id.*

Another case, similar to the case at bar, is Stephens v. Astrue, 2009 WL 387157 (M.D. Ala. Feb. 13, 2008) (No. 1:07cv1001-CSC). In that case, the claimant had a full scale I.Q. of 61. The court rejected the ALJ's reasons for discounting this I.Q. score. The court said that the claimant's work history (he worked at 29 jobs from 1987 to 2002) demonstrated that he was unable to remain in a job for any significant duration, and he had testified that he had "difficulty holding a job because employers 'had to keep telling him over and over' what to do." *Id.*, at *5. He had attended school to the 10th grade, but had attended special education classes. *Id.* He had a license to drive, but was denied a license in 2001 due to problems with his eyes. *Id.* Finally, although he had testified that he "looked through" the newspaper, it was error for the ALJ to conclude that he could read. *Id.*, at *6.

Finally, there is a recent decision from this court. Alday v. Astrue, 2009 WL 347722 (N.D. Fla. Feb. 11, 2009) (No. 5:08cv217-SPM/WCS). In that case, the claimant had a Verbal I.Q. of 66, a Performance score of 73, and a Full Scale I.Q. of 66, and the test was thought to be valid by the psychologist who administered the test. *Id.*, at *3. The ALJ relied in part on the Plaintiff's daily activities of "having a boyfriend," sweeping and doing some laundry, taking care of a dog, and walking grandchildren to school, to find that the I.Q. scores were not reliable and that the claimant was not mildly

mentally retarded.  *Id.*, at *5.  This court held that these minimal activities were not

substantial evidence in the record to draw that conclusion.  *Id.*  The court also

determined that the claimant's work history was not substantial evidence to discount the

I.Q. scores.  The claimant had held jobs spanning the years 1983 through 2003, but her

earnings record showed significant gaps and minimal earnings in a number of years.

*Id.*, at *6.  Relying on Durham and Brown, *supra*, the court held that the ALJ should

have found that the I.Q. scores were valid and met the first criterion of Listing 12.05C.

*Id.*, at *7.

The case at bar is indistinguishable from these latter cases.  Plaintiff's work with

his uncle had the characteristics of sheltered work, with special accommodations made

available due to the family relationship. Plaintiff's earnings history reflects that he did not

begin to earn substantial sums until 1986.  R. 73.  He had no earnings in 1990, 1991,

1992, 1996, and minimal earnings in 1995.  R. 74.  The ALJ's assumption, that Plaintiff's

work history reflects an ability to do his past relevant work in a competitive environment

is not supported by substantial evidence in the record and is not an adequate basis to

discount his I.Q. scores.

Likewise, Plaintiff's reported activities of daily living are indistinguishable from

those reported in the cases discussed above.  That he is able to wash dishes, mow the

lawn, and take care of his personal hygiene, has been held to be not substantial

evidence to discount his I.Q. scores.

The remaining issue is whether Plaintiff has "a physical or other mental

impairment imposing an additional and significant work-related limitation of function" as

required by Listing 12.05C.  The ALJ determined that he did not meet Listing 12.05C

because he found that he does not have any other physical or mental impairment that would satisfy the Listing.  R. 18.  Plaintiff argues that this was error.  Doc. 16, p. 12.

The Eleventh Circuit held in 1985 that a "work-related limitation of function" must be "significant," but it need not be a "severe impairment" as defined at Step 2:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal.  The question under Listing 12.05(C), however, is not whether the impairment is in and of itself disabling, *see Wright v. Schweiker*, 556 F.Supp. 468, 476 (M.D. Tenn.1983); thus, "significant" requires something less than "severe" within the meaning of § 404.1520(c).  That "significant" involves something more than "minimal" but less than "severe" follows from the regulations.  Once a claimant is found to have a "severe impairment" within the meaning of § 404.1520(c), he is deemed disabled (he must also meet the durational requirement), and the analysis comes to an end.[3]  It is only when the impairment is not severe that the inquiry

-----

[3] This seems to have reversed the wording of the provision.  20 U.S.C. § 404.1520(c) provides:

> (c) You must have a severe impairment.  If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience.  However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.

20 U.S.C. § 404.1520(c).  Likewise, § 404.1520(a)(4)(ii) provides:

> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)

20 C.F.R. § 404.1520(a)(4)(ii).

proceeds to determine whether the claimant is disabled under Appendix 1.
A claimant is disabled under § 12.05(C) of the Appendix when the
combination of the impairments renders the claimant severely impaired;
that is, disabled.  Thus, the impairment referred to in § 12.05(C) is
something less than "severe" as defined in § 404.1520(c).

Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985).

Defendant argues that the Eleventh Circuit's interpretation of Listing 12.05C has

been superseded by the Commissioner's new regulation adopted on September 20,

2000.  Doc. 17, p. 6.  Defendant argues:

In August 2000, the Agency published final rules effective September 20,
2000, titled the "Revised Medical Criteria for Evaluation Mental Disorders
and Traumatic Brain Injury" See 65 FR 50746.  A number of changes were
made to the Adult and Child Mental Disorders Listings.  Specifically, the
Agency noted that it always intended the phrase "additional and significant
limitation of function" to mean that the other impairment is a severe
impairment as defined in 20 C.F.R. § 416.924(c).  The Agency noted that
they had explained this policy previously in training manuals, in Social
Security Ruling (SSR) 98-1p, and in SSR 98-2(8)(rescinded on 8/21/00,
effective 9/20/2000).  The Agency went on to note that these final rules
sufficiently clarify the regulations at issue in, among other cases, Sird v.
Chater, 105 F.3d 401 (8th Cir. 1997); see SSR 98-2(8).

Id.  The cited document does not say that.  It simply says: "In final listing 12.05C, as in

the NPRM, we used the word 'an' before the word 'additional' to clarify that the

additional impairment must be 'severe' in order to establish 'an additional and significant

work-related limitation of function.' " 65 FR 50746-01, 50754, 2000 WL 1173632 (F.R.)

(August 21, 2000).  The word "severe," however, has a special meaning in Social

Security law, and refers to step 2.  See footnote 2 above.  Thus, it is reasonable to

conclude that this is the interpretation the Commissioner intends.

_____

Defendant also cites Social Security Ruling 98-1p as adopting this interpretation of the words "significant work-related limitation of function" in Listing 12.05C. That ruling, which pertains to childhood disability claims, equates the word "significant" in Listing 12.05C with "more than minimal limitation of function." This is the same test as used for a "severe" impairment at step 2.

These arguments seem persuasive to me. It is supported by cases from other circuits.[4] If this is the Commissioner's interpretation, it would be entitled to deference by this court.

> Under *Chevron*,[5] we must defer to an administrative agency's interpretation of a statute it is entrusted with administering if: (1) the language of the statute is silent or ambiguous with respect to the particular issue and (2) the agency's interpretation is reasonable.

Lin v. U.S. Atty. Gen., 555 F.3d 1310, __, n. 4 (11th Cir. 2009). While I have not until this occasion closely examined the reasoning of Edwards by Edwards v. Heckler, it may be that the reasoning was flawed. See footnote 2, above. That, however, is a matter that only the Eleventh Circuit may decide.

This court need not decide the issue here, however, as even if the interpretation of the Commissioner is accurate, the conclusion of the ALJ that Plaintiff had no other

---

[4] "[A] decision regarding whether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard . . . ." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). The impairment must be "more than slight or minimal" in effect on the ability of the claimant to perform work. Sird v. Chater, 105 F.3d 401, 403 and n. 5 (8th Cir. 1997) (citing Nieves v. Secretary of Health & Human Serv., 775 F.2d 12, 14 (1st Cir.1985) ("An impairment imposes significant limitations when its effect on a claimant's ability to perform basic work activities is more than slight or minimal.").

[5] Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

"physical or other mental impairment imposing an additional and significant work-related limitation of function" is not supported by substantial evidence in the record.  The physical impairments set forth in this record satisfy the Commissioner's definition, that is, imposing more than a slight or minimal effect upon Plaintiff's ability to perform work.

It is useful here to note how slight the burden is of showing a "severe" impairment at step 2.  At step 2, the issue is whether Plaintiff has shown that he has a condition which has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' " Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).  A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), quoting Baeder v.

Heckler, 768 F.2d 547, 551 (3d Cir. 1985).  It also has been characterized by the

Supreme Court as a criterion which identifies "at an early stage those claimants whose

medical impairments are so *slight* that it is unlikely they would be found to be disabled

even if their age, education and experience were taken into consideration."  Stratton,

827 F.2d at 1452 n. 9 (emphasis by the court), *quoting* Bowen v. Yuckert, 482 U.S. 137,

153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

It is undisputed that Plaintiff suffered a cranial indentation fracture when he was a

child, and that this fracture caused significant problems requiring surgery in about 1985.

Dr. Zoss thought that Plaintiff's "intellectual limitations are of unclear etiology, but that

may be associated with a head injury at age 8 and subsequent brain surgery in 1985."

R. 162.  This is evidence that Plaintiff's head injury was severe.  Dr. Brooks determined

that Plaintiff had "severe decreased visual acuity in the left eye, residuals of an old brain

injury."  R. 183.  Plaintiff testified that after the surgery, he daily experienced pain in his

head as he worked.  He said that he experienced severe headaches about four times a

month, sometimes lasting all day, and the headaches disturbed his sleep about three

times a month.  That such headaches, if true, would interfere with his ability to work

cannot be seriously questioned.  The vocational expert said that experiencing

headaches such that the Plaintiff could not work four days a month would preclude *all*

work.  Experiencing headaches twice a month causing Plaintiff to be unable to work

may not preclude all work, but certainly would preclude work on those days, and that is

more than a minimal effect upon the ability to perform work.

The issue, then, is whether Plaintiff's testimony about his headaches was

credible.  Plaintiff argues that the ALJ's finding that Plaintiff's testimony was not credible

was not supported by substantial evidence in the record.  Doc. 16, p. 14.  As this issue

is critical to the proper determination of Listing 12.05C, it will be discussed here.

Pain and other symptoms reasonably attributed to a medically determinable

impairment are relevant evidence for determining residual functional capacity.  Social

Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect either exertional or

non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing:  (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d
> 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he
> must articulate explicit and adequate reasons for doing so.  *See Hale v.
> Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the
> reasons for discrediting subjective testimony requires, as a matter of law,
> that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d
> 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for

disregarding the claimant's subjective pain testimony must be based upon substantial

evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532

(11th Cir. 1991).  It is not necessary that the ALJ expressly identify this circuit's pain

standard if his findings "leave no doubt as to the appropriate result" under the law.

Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

"A claimant's subjective testimony supported by medical evidence that satisfies

the pain standards is itself sufficient to support a finding of disability.  Indeed, in certain

situations, pain alone can be disabling, even when its existence is unsupported by

objective evidence."  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations

omitted).  "[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  *Id.* at 1562, *quoting*, Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).

The Administrative Law Judge began his reasoning for discounting Plaintiff's testimony by finding that Plaintiff "experiences residuals from a childhood brain injury." R. 20.  He also said: "The claimant does have residuals from an old brain injury; however, *he has no more than moderate limitations as a result.*"  (Emphasis added.) This finding satisfies the first criterion of this circuit's pain standard for it establishes an "underlying medical condition."  It arguably satisfies the second as well, "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." if that the "moderate limitations" determined by the ALJ to be caused by the "old brain injury" include Plaintiff's experience of severe headaches.

As a reason to disbelieve Plaintiff, the ALJ pointed out that Plaintiff worked "many years as an adult," Dr. Brooks found him to be suitable for repetitive physical employment, and Dr. Horvat thought that he could "do well in a situation that was labor intensive and required repetitive work demands."  R. 20.  As noted earlier, the finding that Plaintiff worked "many years as an adult" is not supported by substantial evidence in the record to the extent that this is a finding that Plaintiff did such work on a competitive basis and without special accommodations.  Working for a family member with special allowances is not substantial evidence in the record to not believe Plaintiff's testimony that he suffers from frequent severe headaches.  The comments of Drs.

Brooks and Horvat likewise do not speak to the credibility of that testimony as they were not asked to consider whether he in fact suffers a "significant work-related limitation of function" due to recurring headaches.

The ALJ next discredited Plaintiff's assertion that he suffers from headaches because his "mental status exam was within normal limits." R. 20. The exam was a one-time event, and did not explore Plaintiff's experience of headaches. This is substantial evidence only for the conclusion that Plaintiff did not have a headache on the day of the examination.

The ALJ next relied upon the findings of the State Agency consultants as reasons to disbelieve Plaintiff. R. 20. It bears repeating that Dr. Zoss, one consultant, considered the statements of Plaintiff and "his third party" to be reasonable, attributable to his mental condition, and credible. R. 176. The ALJ noted that those consultants determined that Plaintiff has "mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace." The ALJ again noted that Plaintiff was able to work despite his history of special education and poor reading ability. *Id.* The ALJ noted that Plaintiff was able to obtain a driver's license by having the examination questions read to him. *Id.* It is difficult to see how these findings have any bearing upon the credibility of this specific portion of Plaintiff's testimony concerning the frequency and severity of headaches.

In summary, the ALJ failed to set forth sufficient reasons supported by substantial evidence to disbelieve Plaintiff. Therefore, Plaintiff's testimony is accepted by this court as true. Wilson v. Barnhart, 284 F.3d at 1225. Consequently, it was error

for the ALJ to fail to find that his condition meets Listing 12.05C.  He has shown that he has "a valid verbal, performance, or full scale IQ of 60 through 70."  He has also shown that he has "a physical . . . impairment imposing an additional and significant work-related limitation of function," that is, he suffers headaches as a consequence of his brain injury such that he would be unable to attend work four days a month.

There remains the question of whether the court should reverse and order that benefits be awarded or remand for further proceedings.  "Reversal is warranted where the record is fully developed and, upon the application of correct legal standards, the claimant is entitled to benefits."  Durham, 34 F.Supp.2d at 1381, citing Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991).  This is the proper remedy here.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and an order entered directing the Commission to grant Plaintiff's application for benefits.

**IN CHAMBERS** at Tallahassee, Florida, on March 20, 2009.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10**

**days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**